UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANA GUADALUPE COJ CHINGO,       )<br>                                                          )<br>            Petitioner,                          )<br>                                                          )<br>       v.                                                )     No. 2:25-cv-00590-JAW<br>                                                          )<br>DERRICK STAMPER, et al.,              )<br>                                                          )<br>            Respondents.                      ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order, enjoining respondents from removing the petitioner from the District of Maine pending further order of this court.

**I.    BACKGROUND**

On November 24, 2025, Ana Guadalupe Coj Chingo filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against her removal from the District of Maine. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1) (*Pet.*); *Emer. Mot. for Temp. Restraining Order to Stop Transfer Without Prior Consent* (ECF No. 3) (*Emer. Mot.*). Ms. Chingo is currently in the custody of U.S. Immigration and Customs Enforcement (ICE) and is detained at the Cumberland County Jail in Portland, Maine. *Pet.* ¶ 36.

Ms. Chingo is a member of the Maya Quiche Indigenous Group and a Guatemalan citizen who fled to the United States to escape discrimination and violence in her home country. *Pet.* ¶¶ 16-18.  Upon entry into the United States on or about September 5, 2014, the U.S. Department of Homeland Security (DHS) detained Ms. Chingo. *Id.* ¶ 19.  On September 6, 2014, DHS performed a custody

determination, finding Ms. Chingo should be detained in DHS custody. *Id.* ¶ 21; *id.*, Attach. 1, *Ex. 5*. On September 7, 2014, DHS initiated removal proceeding against Ms. Chingo, issuing her a notice to appear, *id.* ¶ 20; *id.*, Attach. 1, *Ex. 4*, and, the following day, released her on her own recognizance. *Id.* ¶ 22; *id.*, Attach. 1, *Ex. 6*. Ms. Chingo moved to Massachusetts, where she has resided ever since. *Id.* ¶ 23.

In July 2015, Ms. Chingo lodged an asylum application under the Convention Against Torture Act with the Boston, Massachusetts Immigration Court, which was later filed on July 27, 2023. *Id.* ¶ 24. On August 11, 2025, Ms. Chingo filed an application for cancellation of removal for non-permanent residents in the same court. *Id.* On May 12, 2025, her husband, who is a lawful permanent resident, filed Form I-929 with U.S. Citizenship and Immigration Services (USCIS). *Id.*; *id.*, Attach. 1, *Ex. 7*. Her individual hearing before the Boston, Massachusetts Immigration Court was rescheduled for December 5, 2029 to allow USCIS to process the Form I-929. *Id.* ¶ 25; *id.*, Attach. 1, *Ex. 8*.

On or about November 19, 2025, after an argument with her husband, state police questioned Ms. Chingo and took her into custody. *Id.* ¶¶ 28-30. After processing at the local police station, she was transferred into ICE custody in Burlington, Massachusetts before being transferred to Cumberland County Jail in Portland, Maine. *Id.* ¶¶ 31, 33-34. Ms. Chingo alleges no administrative warrant had issued at the time of her arrest. *Id.* ¶ 32. Although Ms. Chingo intends to request a bond hearing, she anticipates being denied. *Id.* ¶¶ 7-13.

Ms. Chingo alleges her detention violates the Immigration Nationality Act and her due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 50-68. She seeks a TRO enjoining her transfer outside the District of Maine during the pendency of her habeas proceedings against Derrick Stamper, in his official capacity as chief patrol agent for U.S. Border Patrol, Houlton Sector; Rodney Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection; David Wesling, in his official capacity as the Acting Director of the Boston Field Office of ICE; Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of DHS; and Pamela Bondi, in her official capacity as Attorney General (collectively, Respondents).[1] *Emer. Mot.* at 1-4; *Pet.* ¶¶ 7-12, at 11-12. She also seeks, inter alia, a writ of habeas corpus ordering her immediate release during the pendency of her habeas proceedings, or in the alternative, an order requiring an Immigration Judge to provide her a bond hearing as soon as possible. *Id.* at 11-12.

## II. LEGAL STANDARD

The standard for issuing a TRO is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom,*

---

[1] Ms. Chingo includes Matthew Hladik, Area Port Director of the Portland, Maine Office of Field Operations for U.S. Customs and Border Protection, in the caption of her verified petition but does not list him as a party in her petition.

*LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

### III.   DISCUSSION

At the conference of counsel on November 26, 2025, Respondents conceded that a TRO should issue at this time. *Min. Entry* (ECF No. 11). In conceding the propriety of the issuance of a TRO, Respondents have implicitly admitted that the Court may

conclude that the Petitioner has proven each of the four factors essential for the issuance of a TRO.  The Court accepts Respondents' concession.

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  Here, the "irremediable" injury would be removal from this Court's jurisdiction pending Ms. Chingo's habeas corpus proceedings.  Accordingly, the Court circumscribes its remedy, at this time, to prevent Respondents from removing Ms. Chingo from the District of Maine pending further order of this Court.

## IV.     BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  FED. R. CIV. P. 65(c).  The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined."  *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Here, to comply with the mandatory nature of the bond requirement, the Court requires the Ms. Chingo to post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

V.   **CONCLUSION**

The Court ORDERS Respondents in this matter are hereby ENJOINED from removing Ana Guadalupe Coj Chingo from the District of Maine pending further order of this Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2025